HALL, Judge.
Plaintiffs, the present owners of a shopping center seek to recover from one of their lessees, defendant L. E. Freeman, the sum of $3,900 as accelerated rental due under a five year written lease, allegedly amended by oral agreement. Defendant denies any remaining obligation under the lease, contending that plaintiffs took possession of the leased premises without his consent which constituted an eviction for which he is entitled to cancellation of the lease. After trial on the merits judgment was rendered in favor of plaintiffs as prayed for and defendant appealed. We reverse the judgment of the district court.
On May 27, 1968, plaintiffs entered into a written lease with defendant covering certain space in the shopping center owned by plaintiffs. The lease was for a five year term beginning June 15, 1968, and *110 provided for a rental of $215 per month. After a period of four or five months defendant closed the business for which he leased the premises and continued to pay rental at the specified monthly rate. In August, 1969, defendant subleased the premises to Clarice Roan at a monthly rental of $100 for a term of one year beginning September 1, 1969, with an option to renew the sublease for an additional one year term. A copy of the sublease was furnished to plaintiffs. The sublessee commenced paying defendant $100 per month which defendant deposited to his own account and, in turn, continued writing a check to plaintiffs for $215 each month.
At about this same time, plaintiffs were negotiating with a prospective tenant, Elaine Powers Beauty Salon, who desired floor space equivalent to two of the units into which the building had been initially divided. In order to accommodate the prospective tenant, it was necessary to shift Miss Roan and one other tenant into adjacent space, thereby making two adjoining units available to the prospective tenant.
Plaintiffs authorized Jerry Carter, a realtor who handled plaintiffs’ leasing arrangements, to contact defendant for the purpose of obtaining his consent to move Miss Roan to other space in the building. Mr. Carter testified that pursuant to his authorization he called on defendant at defendant’s doughnut shop and while sitting at the coffee bar proposed that in return for his agreement to the move, plaintiffs would reduce defendant’s rent from $215 to $200 per month, honor Miss Roan’s sublease and “if Miss Roan exercised her one year option or not, that he would be no longer obligated for more than $100 per month for the remainder of his lease, whether it was rented or not.” Mr. Carter testified that he “assumed” that Freeman understood the proposition and that he “was inclined to go along with it.” Carter testified he believed Freeman’s reply was “sounds good to me” and that when asked if Carter could proceed along these lines he replied “yes”. There was no further contact between plaintiffs or their representative and defendant until this dispute arose.
Mr. Freeman testified that he remembered having a conversation with Mr. Carter over coffee in the doughnut shop and that Mr. Carter said he was working on a deal involving a prospective tenant and asked defendant if he was interested in “getting off the hook.” Mr. Freeman testified he did not pay much attention to the conversation because he did not think Carter could work out the deal and Freeman denied that any details of a reduction in rent were discussed or that any firm agreement was reached.
Plaintiffs proceeded to make their arrangements with the new tenant and a written lease was entered into with the new tenant for a five year term beginning January 1, 1970, at a rental of $450 per month for the two units. Plaintiffs contacted Miss Roan and obtained her consent to the move and did, in fact, move her in the latter part of November or the first part of December, 1969. The other tenant also agreed to the move and plaintiffs relieved that tenant of his obligations under his written lease and allowed him to remain in the new space on a month to month basis.
Defendant testified his first knowledge that the move had actually taken place came when he observed the situation at the shopping center in December, 1969. When he received his next check from Miss Roan for $100, he deposited it to his own account and sent plaintiffs his check for the $100, but did not pay the additional $115. Thereafter, when defendant received Miss Roan’s check each month, he simply mailed it on to plaintiffs without endorsement. Plaintiffs endorsed defendant’s name to the back of Miss Roan’s checks and deposited them to their account. Defendant made no payment of any additional amount and this suit was filed.
The trial court found that plaintiffs were convinced they had a binding agree *111 ment with defendant because of the manner in which they handled his sublease with Clarice Roan. The court further found that defendant originally accepted the change, that he had everything to gain and nothing to lose, and that he was bound by the agreement.
On appeal defendant urges that the trial court erred in holding that the original lease was amended by the alleged verbal agreement and in disregarding the testimony of defendant and surrounding circumstances. Defendant also contends that the alleged oral amendment did not contain the essential elements of a lease in that it was uncertain as to the thing, price and consent.
Unless there was an oral agreement and a meeting of the minds between plaintiffs and defendant as to the change in the leased premises and a change in the amount of rent, then plaintiffs are not entitled to recover. Unless the change in the premises leased was consented to by defendant, plaintiffs’ action in moving the sublessee and leasing the space to a new tenant amounted to an eviction, giving defendant the right to cancel the lease and relieving defendant of any further obligation for the payment of rent.
It is our conclusion that plaintiffs failed to meet their burden of proving that an oral amendment to the written lease was confected during the one conversation between Mr. Carter and Freeman, with a mutual understanding and meeting of the minds between both parties as to the terms of the amendment. The trial court accepted Carter’s version of the conversation and gave weight to the fact that plaintiffs proceeded on the basis that they had an agreement with Freeman. We do not disagree with these factual findings of the trial court. But even accepting Carter’s version of the conversation and the fact that he and his principals believed there was an agreement with Freeman, we find that Carter’s own version of the proposal he put to Freeman and his version of Freeman’s reply fall short of establishing a definite contract between the two, particularly in light of defendant’s emphatic denial that a firm agreement was reached. It is significant that the agreement was not reduced to writing even though plaintiffs had a policy of entering into written leases with all of their tenants.
Taking Mr. Carter’s own words, the proposal made by him to Freeman was indefinite as to the date when defendant’s rent would be reduced. Mr. Carter testified that this was to be done “immediately” but defendant continued to pay at the original monthly rate until the move was actually accomplished several months after their conversation. While plaintiffs’ actions were consistent with their belief that an agreement had been reached, it is likewise a fact that defendant’s actions were consistent with his belief that the original lease was in effect until the move was actually made, at which time defendant stopped making rental payments.
Again using Carter’s own words, the proposal is not clear as to exactly what defendant’s future liability was to be. If his liability was to be limited to $100, did that mean that his liability was discharged by the sublessee’s payment of $100 or did that mean that defendant owed an additional $100?
We hold that plaintiffs have failed to carry their burden of proving there was an oral amendment to the original lease and, therefore, when the sublessee was moved from the leased premises and the space rented to another tenant, the original lease was subject to cancellation and defendant was relieved of further obligations thereunder.
For the reasons assigned, the judgment of the district court is reversed and there is now judgment in favor of defendant and against plaintiffs rejecting plaintiffs’ demands at plaintiffs’ cost.
Reversed and rendered.